ROBERTSON, Justice:
Plaintiff, Wallace Barnes, a ship’s cleaner of many years with Ingalls, sued Defendant, Ingalls Shipbuilding Corporation, in the Circuit Court of Jackson County for injuries sustained by him while working on a launched, but incompleted ship, moored in navigable waters of the United States at the dock of the Defendant in Pascagoula, Mississippi.
After a full trial, the circuit court directed a verdict for the defendant. Barnes assigns as error this action of the court.
Barnes and Ingalls stipulated that Barnes was an employee of Ingalls on and prior to June 9, 1968, and was employed in the capacity of a ship’s cleaner. Barnes was not attached to any one ship but worked on any ship in the yard of Ingalls to which he was assigned. On June 9, 1968, Barnes was removing grease from a hatch cover on Hull 496, also known as SS DELTA BRASIL, preparatory to painting the hatch cover, when a fellow employee accidentally opened the cover while Barnes was working between the two halves of the cover, and Barnes was caught between them.
Plaintiff was paid compensation benefits under the Longshoremen and Harborwork-ers Act in the amount of $1,179.97 for temporary total disability, $5,997.02 for 30 per cent permanent partial disability to the left leg, making a total of $7,176.99, and In-galls has also paid all medical expenses incurred by Barnes as the result of such accident.
*889 It was also stipulated that plaintiff was not on June 9, 1968, or any date prior thereto, a seaman or a member of the crew, but on June 9, 1968, was performing his regular duties as a ship’s cleaner. Hull 496 or SS DELTA BRASIL was launched on December 12, 1967, had a sea trial on June 1 and 2, 1968, and an official trial on June 4 and 5, 1968, but these were the only occasions when Hull 496 went to sea under its own power prior to June 9, 1968. Barnes was not aboard on either trial run. Between June 9, 1968, and June 23, 1968, the employees of Ingalls put in 25,961 man hours of work on Hull 496. SS DELTA BRASIL was delivered to and accepted by Delta Steamship Lines on June 21, 1968. SS DELTA BRASIL was a new ship and never carried any cargo on or prior to June 9, 1968.
Barnes, in his declaration, charged that Ingalls failed to provide a seaworthy vessel and also charged that Ingalls was negligent in failing to provide him with a safe place to work and was negligent in that the crew members in and upon said ship were improperly trained, the crew was understaffed, and insufficient provisions were made for the safety of the people then and there working in and upon said vessel.
One of the first cases dealing with charges of unseaworthiness or negligence on the part of the employer was Frankel v. Bethlehem-Fairfield Shipyard, Inc., 132 F. 2d 634 (4 Cir. 1942), cert. den. 319 U.S. 746, 63 S.Ct. 1030, 87 L.Ed. 1702. The Court had this to say:
“Counsel for the plaintiff, however, strenuously contends that there is no difference, for practical purposes, between a man who is injured while working on an incompleted vessel lying in navigable waters, and a man injured while working on a completed vessel in navigable waters. We do not regard this difference as slight and meaningless in the light of two important factors. In the first place, a contract to build a vessel is non-maritime in nature. Robinson on Admiralty (1939) 162-165; Peoples Ferry Co. v. Beers, 20 How. 393, 15 L.Ed. 961. As stated by the Supreme Court:
“ ‘Under decisions of this court the settled ruje is that a contract for the complete construction of a ship or supplying materials therefor is non-maritime, and not within the admiralty jurisdiction.’ Thames Towboat Co. v. The Francis McDonald, 254 U.S. 242, 243, 41 S.Ct. 65, 66, 65 L.Ed. 245.
“Moreover: ‘Whether the character of the contract is maritime or not may also give maritime flavor to injuries sustained in and about its performance.’ Robinson on Admiralty (1939) 170.
“Accordingly, since a contract for the building of a ship is non-maritime in character, a tort arising out of work on a launched but incompleted vessel also lacks maritime flavor, despite the fact that the vessel is lying in navigable waters. Furthermore, an incompleted vessel has yet to take her place in commerce and navigation; whereas a vessel which has been commissioned and taken into navigation and commerce remains in that status even when coming into a dock and undergoing certain repairs.
“For these reasons, we do not feel that the plaintiff was a seaman within the meaning of the Jones Act, since he was not a member of the crew and his duties had no direct relation to navigation. He was merely working on an incompleted structure which was being erected under a non-maritime contract.” 132 F.2d at 635-636.
The latest case on this subject is Williams v. Avondale Shipyards, Inc., 452 F.2d 955, decided by the United States Court of Appeals for the Fifth Circuit on September 20, 1971. The Court stated the facts:
“During a final sea trial run of the USCG Cutter Hamilton prior to its delivery to the United States Coast Guard, Edgar J. Williams either slipped on an *890 oil spot or became engaged in a fistfight. In whichever manner, he injured his right index finger. .
“Williams worked for Shipbuilder as an engineering draftsman during 1966 and 1967. At that time Shipbuilder was engaged in construction of USCGC Hamilton, a new vessel being built for the United States Coast Guard. The contract called for sea trials. In January of 1967 Williams was assigned to go aboard Hamilton for approximately two days to serve as a data-taker and gauge monitor during final sea trials of the vessel. Shipbuilder’s crew was aboard. It was during this trial run that his injuries were sustained. A month later, after additional construction activities and procedures were carried out, the Hamilton was delivered to and accepted by the United States Coast Guard.” 452 F.2d at 956-957.
The Court, in deciding that there was no warranty of seaworthiness, said:
“The whole purpose of the sea trial was to ascertain what additional work would be required to make the Hamilton fully fit. ... At this stage of construction, no one was holding forth to any persons going aboard the vessel that she was in fact completed, fit and seaworthy. That was precisely what the trial run was intended to determine.” 452 F.2d at 957.
In ruling that the Jones Act, 46 U.S.C.A. § 688, did not apply because Williams was not “a seaman” in the sense that the term is used in the Jones Act, the Court said:
“A shipbuilder’s worker, construction hand or engineer assisting in the building and ultimate commissioning of a launched but uncompleted vessel floating or maneuvering in navigable waters is not a seaman within the meaning of the Jones Act, because his vessel is not yet an instrumentality of commerce — private or public — and is therefore not ‘in navigation.’ .
“For there to be a seaman, there must first be a ship. And an incompleted vessel not yet delivered by the builder is not such a ship. Ship and seaman, ship and seaworthiness are mutual reflexes.” 452 F.2d at 958.
Inasmuch as there was no warranty of seaworthiness to Barnes, and inasmuch as Barnes did not qualify under the Jones Act, the sole and exclusive remedy available to him was that remedy afforded by the Longshoremens and Harborworkers Act, 33 U.S.C.A. § 901 et seq. He has already availed himself of all rights and remedies under that Act.
The trial court was eminently correct in directing a verdict for Ingalls, and the judgment of that court is affirmed.
Affirmed.
RODGERS, P. J., and JONES, PATTERSON and INZER, JJ., concur.